IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EDWARD J. NAZAR, Trustee of the
Bankruptcy Estate of Wendy Lynn Bonjour, on
behalf of himself and all other persons similarly
situated,

Plaintiffs,

vs.                                                    Case No. 04-1340-JTM

MIDWEST CHECKRITE, INC., a Kansas
Corporation; BIBLER & NEWMAN, P.A., a
Kansas Professional Association; and R. ALAN
BIBLER,

Defendants.

**MEMORANDUM AND ORDER**

This matter comes before the court on the defendants' Motions for Summary Judgment (Dkt.

Nos. 42, 44). The central issue is whether defendants' garnishment of plaintiff's wages violated K.S.A.

§ 60-2310. Defendants argue that they were acting as agents for Med-Assist, their client, so they

could properly garnish Wendy Bonjour's wages. Plaintiff responds that Checkrite assumed ownership

of Ms. Bonjour's delinquent account with Med-Assist, and under Kansas law, as assignees defendants

could not garnish Ms. Bonjour's wages. After reviewing the parties' arguments, the court grants

defendants' motions.

**I. FINDINGS OF FACT**

CheckRite is a business that works with Med-Assist, an urgent care center, to help it collect on worthless checks.  When a check from one of Med-Assist's customers is deposited in Med-Assist's bank account at Commerce Bank of Topeka, the bank runs the check through twice. If the check does not clear, Commerce Bank sends the check to Checkrite.  Med-Assist advances no money to collect the check. CheckRite advances all funds necessary to collect the check.  Once possession of the check has been given to CheckRite, CheckRite does not ask Med-Assist for a recommendation as to what counsel should be retained to pursue the lawsuit or what the fees for any legal services provided are to be. CheckRite makes those decisions.

An Agreement between CheckRite and Med-Assist sets forth the terms of CheckRite's collection efforts.  The Agreement provides that:  "CheckRite agrees to remit to Subscriber payment(s) received on checks processed. Subscriber understands and CheckRite agrees that the intent of CheckRite is to collect and to remit 100% of the face value of the check upon recovery, whether recovery is made before or after suit is filed.  All recovery over the face value of the check, including service charges, attorney fees, court costs and damages, whether Court awarded or by settlement, shall be retained by CheckRite."  If the Subscriber selects legal processing, the Agreement authorizes CheckRite to utilize "legal processing" or the legal system, as a collection tool.  The Agreement states that Med-Assist authorizes CheckRite to transfer all unrecovered checks to the Legal Division of CheckRite for further activity, and hereby assigns to CheckRite all rights to collect any amounts due thereunder.  The Agreement provides that legal services will be provided on behalf of Med-Assist.  More specifically, the Agreement provides that  "[i]f suit is commenced in [Med-Assist's] name, the Attorney shall be regarded as [Med-Assist's] attorney." In this case, the

2

lawsuit was brought in CheckRite's name.

Before initiating legal proceedings against any individual, CheckRite will check with Med-Assist and does so by sending Med-Assist a letter advising that legal action is being contemplated.  Med-Assist then advises CheckRite if it does not want that step to be taken. If Med-Assist does not respond, CheckRite forwards the matter to the Bibler & Newman law firm.  Bibler & Newman handles the legal aspect of the collection work.

The parties dispute whether the firm represents Med-Assist or CheckRite.  Bibler & Newman claims to have an agreement with CheckRite, who is acting as agent for Med-Assist. There is no written agreement between the law firm and Med-Assist. The law firm claims that the agency relationship between CheckRite and Med-Assist arises from the Agreement.

After the lawsuit is filed, Med-Assist has no correspondence with the law firm that CheckRite retains; does not know which law firm CheckRite has retained; is never sent a statement from the law firm concerning how much its legal fees are; is not sent a statement showing how much, if any, has been collected on the check; is not sent a statement from the law firm that indicates that Med-Assist has a right to have a court review the fees the law firm charges for its services, even though the lawsuit is pursued on a contingent fee basis; does not have any input as to whether a lawsuit should be filed other than a letter from CheckRite asking Med-Assist to call if Med-Assist does not want a lawsuit filed; does not know if a demand letter has been sent by the law firm before a lawsuit is filed; never receives a copy of a demand letter from the law firm; has never seen a written agreement entered into between CheckRite and the law firm and does not know if a written agreement has ever been made; never has any telephone conversations with the law firm concerning collection; does not know the amount of the

judgment when it is entered; does not know how much money was paid to the law firm for the services it provided in filing the lawsuit; is not sent a copy of the petition; is not sent a copy of the journal entry; and is not sent a copy of any garnishments, bench warrants, or other related pleadings.

After CheckRite obtains possession of the check, if the payor contacts Med-Assist to attempt to make arrangements to pay the check, Med-Assist tells the payor they need to contact CheckRite. Med-Assist does not know what happens when the payor contacts CheckRite.  Statutory damages are collected and paid to either the law firm or CheckRite or a combination of the law firm and CheckRite depending upon who advances the costs. In the present case, Med-Assist advanced no costs and, therefore, was not entitled, under the Agreement, to any of the damages.  The only party that receives a statement from the law firm indicating the total amount of money that was collected is CheckRite. Med-Assist receives no such statement.  The law firm has physical possession of the check at the time the lawsuit is filed. The law firm obtains possession of the check from CheckRite.

Provided that Bibler & Newman are successful in obtaining payment, the first money recovered is used to remit the face amount of the check to Med-Assist.  The next amount collected is used to cover the service charge, an amount set by state statute.  Bibler & Newman forward these monies, including the service fee allowed by Kansas law, to CheckRite.  CheckRite then forwards the check amount, plus $5 of the service fee, to Med-Assist, and retains the balance of the service fee as compensation for its services.  All money collected, including the filing fees and surcharges, is retained by Bibler & Newman for its services.

Ms. Bonjour incurred a debt to Med-Assist in the amount of $54 after a check she wrote did

4

not clear.  CheckRite was unsuccessful in recovering on the bounced check.  CheckRite sent Med-Assist a letter recommending filing a lawsuit and Med-Assist consented. Bibler & Newman thereafter obtained a default judgment against Ms. Bonjour (then Shelton) in the amount of $551.73 plus costs of $46.00. The named plaintiff was CheckRite.  Ms. Bonjour did not contest the garnishment because she did not believe she had a valid argument against the debt.

To collect the judgment, Bibler & Newman filed a request for wage garnishment and served an order garnishing Ms. Bonjour's wages on her employer.  Funds totaling $828.00 were garnished from Ms. Bonjour's wages.  Of the $828.00 garnished, $54 (the face value of the check) plus $5 was remitted to Med-Assist.  CheckRite has no written agreement concerning Bibler & Newman representing CheckRite in the present lawsuit.

Clint Bibler is the president of Midwest CheckRite, Inc. He is R. Alan Bibler's son. He has been president of Midwest CheckRite since November, 2004.  Prior to that, he was vice president, having started with CheckRite in November, 2001.

Juli Haller is the business manager of Med-Assist and has been the business manager for approximately 15 years.  She does not know Alan Bibler or Clint Bibler.  She is not sure if she had ever met Alan Bibler before and only met Clint Bibler for the first time on the day of her deposition.

## II. SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law.  Fed.R.Civ.P. 56(c).  In

5

considering a motion for summary judgment, the court must examine all of the evidence in a light most

favorable to the opposing party.  Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998).

The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond

a reasonable doubt.  Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993).  The moving

party need not disprove the nonmoving party's claim or defense; it need only establish that the factual

allegations have no legal significance.  Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d

1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some

metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must

come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))

(emphasis in Matsushita).  The opposing party may not rely upon mere allegations or denials contained

in its pleadings or briefs. Rather, the opposing party must present significant admissible probative

evidence supporting that party's allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986).

**III. ANALYSIS**

K.S.A. § 60-2310 sets forth the conditions under which a debtor's wages may be garnished.

The statute provides specific restriction on wage garnishment when an account is assigned.  Specifically,

the statute states: "[i]f any person, firm or corporation sells or assigns an account to any person or

collecting agency, that person, firm or corporation or their assignees shall not have or be entitled to the

benefits of wage garnishment."  K.S.A. § 60-2310(d).

The central issue in this motion is whether there has been an assignment of the account. Although the statute does not define the term, a U.S. District of Kansas court has already addressed this issue. In Bieber v. Associated Collection Services, Inc., 631 F. Supp. 1410, 1410 (D. Kan. 1986), the court examined whether a hospital retained ownership of an account that had been sent to a debt collector. The debtors had received a notice stating that their account "had been assigned" to the collection agency. Id. at 1413. The court, however, did not dwell heavily on the language of the notice and instead turned to the legislative history of K.S.A. § 60-2310. Id. at 1414. In its original form, K.S.A. § 60-2310 prohibited garnishment if the creditor "sells or assigns his accounts...or sends or delivers the same to any collection agency..." Id. at 1414. However, in 1979, the legislature deleted the "sends or delivers" language from the statute seemingly intending "that wage garnishment should be prohibited only if the creditor completely relinquishes ownership and control of the account." Id. at 1415. A 1979 Kansas Attorney General's opinion comports with this interpretation, finding that " '[s]uch prohibition will no longer extend to those situations where a creditor utilized a collection agent or agency to collect the debtor's account, but retains ownership and control thereof.' " Id. The court found that the hospital and ACS did not intend for an assignment to be made. Id. There was no assignment as the term is used in K.S.A. § 60-2310(d). Id.

Plaintiff raises several arguments attempting to distinguish Bieber from this case. First, plaintiff argues that the agreement states that rights are assigned to CheckRite, in contravention of K.S.A. § 60-2310(d). The court does not find this to be the case. The agreement between CheckRite and Med-Assist specifically uses the word "assign." However, this is only in relation to the "rights to collect any amounts due thereunder." Such a transfer is not of actual ownership of rights to the accounts but only

7

for the collection.  There is no indication that the parties intended for Med-Assist to abandon all rights of ownership.  Rather, the arrangement appears to be a more efficient way for Med-Assist to collect outstanding bills without having to create its own internal collection agency.

Next, plaintiff argues that as holders of the check, defendants should be considered the owners of the instrument because possession is an indicia of ownership.  Plaintiff's attempt to equate possession or holder status with ownership is without merit.  At best, plaintiff argues that a holder "may" own or that possession "may" indicate ownership.  This, however, is mere speculation and contrary to the limited transfer of rights described in the parties' agreement.  Delegating to a third party the responsibility of collecting amounts due is not the equivalent of transferring complete ownership.  Possession and ownership are two legally distinct concepts.  While the agreement permits possession, it does not transfer ownership.

Finally, plaintiff argues that CheckRite brought the lawsuit against Ms. Bonjour, so the attorneys should be considered CheckRite's attorneys and not Med-Assist's.  Again, the court does not find this to be the case.  Simply because CheckRite brought the action against Ms. Bonjour does not make CheckRite the owner of the account.  CheckRite only undertook the legal proceedings to which its subscriber consented.  Furthermore, Ms. Bonjour did not raise this argument in the state action, and the court will not relitigate a case in which Ms. Bonjour has already waived her rights.  Plaintiff's related argument that Bibler was CheckRite's attorney is also without merit.  The agreement only states that a lawsuit commenced in Med-Assist's name renders the attorney Med-Assist's attorney. The agreement does not state the opposite – that an action brought in CheckRite's name will make the attorney CheckRite's attorney.  The court declines to read this into the agreement.  While the facts vary slightly,

8

the principles of <u>Bieber</u> are applicable here.

Having found no violation of K.S.A. § 60-2310(d), the court also dismisses the remaining counts of this action.

IT IS ACCORDINGLY ORDERED this 23rd day of September, 2005, that the court grants defendants' Motions for Summary Judgment (Dkt. Nos. 42, 44) and dismisses this action.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE